STATE of Wisconsin, Plaintiff-Respondent,

v.

Paul Delao QUIROZ, Defendant-Appellant.†

Court of Appeals

*No. 01–1549–CR. Submitted on briefs January 10, 2002.—Decided January 30, 2002.*

2002 WI App 52

(Also reported in 641 N.W.2d 715.)

† Petition to review denied 5-21-02.

On behalf of the defendant-appellant, the cause was submitted on the brief of *Chad G. Kerkman* of *Kerkman Law Offices, S.C.*, of Twin Lakes.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Edwin J. Hughes*, assistant attorney general, and *James E. Doyle*, attorney general.

Before Nettesheim, P.J., Brown and Snyder, JJ.

¶ 1. SNYDER, J. Paul Delao Quiroz appeals from a judgment of conviction and an order denying his postconviction motion to withdraw his guilty pleas. Quiroz argues that he should have been allowed to withdraw his guilty pleas for two reasons: (1) because he was incorrectly informed that his maximum exposure was fourteen years' imprisonment; and (2) he was unaware of the presumptive minimum penalty at the time of his pleas. We disagree with both of these assertions and affirm the judgment and order of the trial court.

## FACTS

¶ 2. In a criminal complaint filed on November 4, 1999, Quiroz was charged with the following: attempted first-degree intentional homicide, as a party to a crime, while armed, as a gang-related crime (Count 1); attempted first-degree intentional homicide, as a party to a crime, while armed, as a gang-related crime (Count

248

2); discharging a firearm from a vehicle at a person, as a party to a crime, as a gang-related crime (Count 3); and possession of marijuana, as a party to a crime (Count 4). An information filed on December 2, 1999, alleged the same crimes.

¶ 3.   Quiroz eventually accepted a plea bargain. Quiroz agreed to plead guilty to Count 1 as an amended and reduced charge of first-degree reckless endangerment of safety, as a party to a crime, while armed, as a gang-related crime, and to Count 3 as charged in the information; Counts 2 and 4 would then be dismissed and read in for sentencing purposes. In exchange for the guilty pleas, the prosecutor agreed to recommend the maximum penalty on the reckless endangerment charge and consecutive probation for the discharging a firearm charge.

¶ 4.   At the plea hearing, the prosecutor informed the trial court, and the trial court confirmed, that the maximum penalty for the reckless endangerment charge was fourteen years' incarceration. There was no mention of any presumptive minimum penalty at the plea hearing.

¶ 5.   Quiroz was sentenced on February 14, 2000. At sentencing, the prosecutor again recommended the maximum of fourteen years' imprisonment on the reckless endangerment charge and consecutive probation on the discharge of a firearm charge but also noted that the reckless endangerment charge carried with it a presumptive minimum penalty of three years. Quiroz's attorney asked for imprisonment not to exceed three years and Quiroz himself stated, "I ask no more than five years at least, three years if I could. . . ." The trial court sentenced Quiroz to twelve years' imprisonment

on the reckless endangerment charge and a consecutive term of ten years' probation on the discharging a firearm charge.

¶ 6.  On March 8, 2001, Quiroz filed a motion to withdraw his guilty pleas, alleging that he was misinformed of the maximum penalty and unaware of the presumptive minimum penalty for Count 1 at the time of his pleas. After a hearing was held on May 10, 2001, to address these issues, the trial court denied Quiroz's motion. Quiroz appeals.

## DISCUSSION

¶ 7.  Decisions on plea withdrawal requests are discretionary and will not be overturned unless the trial court erroneously exercised its discretion. *State v. Spears*, 147 Wis. 2d 429, 434, 433 N.W.2d 595 (Ct. App. 1988). A motion filed after sentencing should only be granted if it is necessary to correct a manifest injustice. *State v. Duychak*, 133 Wis. 2d 307, 312, 395 N.W.2d 795 (Ct. App. 1986). Quiroz has the burden of proving by clear and convincing evidence that a manifest injustice exists. *State v. Schill*, 93 Wis. 2d 361, 383, 286 N.W.2d 836 (1980).

¶ 8.  Quiroz first argues that he should have been allowed to withdraw his guilty plea to the reckless endangerment charge because he was incorrectly informed that his maximum exposure was fourteen years' imprisonment; Quiroz claims that fourteen years is inaccurate and that his correct maximum exposure was thirteen years. We disagree with Quiroz's calculation of the maximum penalty.

¶ 9.  Resolution of this issue requires the interpretation of the penalty enhancer statutes, a question of

law that we review de novo. *State v. Pernell*, 165 Wis. 2d 651, 656, 478 N.W.2d 297 (Ct. App. 1991). First-degree recklessly endangering safety is a Class D felony. WIS. STAT. § 941.30(1) (1997–98).[1] In 1999, the maximum penalty for a Class D felony was five years' prison. WIS. STAT. § 939.50(3)(d).

¶ 10.  This five-year maximum penalty could be increased if the person committed the crime while using a dangerous weapon; if the maximum term of imprisonment is more than two years but not more than five years, the maximum term of imprisonment for the felony could be increased by no more than four years. WIS. STAT. § 939.63(1)(a)3. In addition, the penalty for the underlying crime can be increased if the crime is gang-related; if the maximum term of imprisonment is more than two years but not more than five years, the maximum term of imprisonment can be increased by not more than four years for a gang-related crime. WIS. STAT. § 939.625(1)(b)3. However, if the maximum term of imprisonment is more than five years, the maximum term of imprisonment can be increased by up to five years for a gang-related crime. Sec. 939.625(1)(b)2.

¶ 11.  Quiroz arrives at his thirteen-year maximum penalty as follows:   the maximum for his Class D felony crime was five years. With the dangerous weapon penalty enhancer, this five-year penalty could be increased by no more than four years. WIS. STAT. § 939.63(1)(a)3. In addition, with the gang-related penalty enhancer, the original five-year penalty could be increased by up to four years, WIS. STAT. § 939.625(1)(b)3, for a total of thirteen years.

---

[1] All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

¶ 12. We disagree with Quiroz's calculations and find that the trial court's calculation of the fourteen-year maximum penalty was correct. This issue is governed by *Pernell*, 165 Wis. 2d at 651. In *Pernell*, the defendant was guilty of misdemeanors to which were applicable two separate penalty enhancers, one for committing the crimes while armed, the other for habitual criminality. *Id*. at 654. The maximum sentence of nine months for these misdemeanors was increased by six months because of the dangerous weapon enhancer. *Id*. The habitual criminality penalty enhancer increased a maximum term of one year or less by three years and increased a maximum term of more than one year but not more than ten years by six years. *See id*. at 654–56.

¶ 13. The *Pernell* trial court concluded that once the original nine-month sentence was increased by six months due to the dangerous weapon enhancer, the new maximum sentence was fifteen months and thus the six-year habitual criminality penalty enhancer was applicable. *Id*. at 654–55. We affirmed the trial court's conclusions. *Id*. at 660. *Pernell* therefore establishes that when two penalty enhancers are applicable to the same crime, the length of the second penalty enhancer is based on the maximum term for the base crime as extended by the first penalty enhancer.

¶ 14. Here, the maximum for Quiroz's Class D felony crime was five years. With the dangerous weapon penalty enhancer, this five-year penalty could be increased by no more than four years, Wis. Stat. § 939.63(1)(a)3, for a new maximum penalty of nine years. We now add the gang-related penalty enhancer to the nine-year maximum penalty. Because the maximum term of imprisonment is more than five

years, it can be increased by up to five years, Wis. STAT. § 939.625(1)(b)2, for a maximum penalty of fourteen years.[2]

¶ 15. Quiroz attempts to distinguish *Pernell* by claiming a distinction between penalty enhancers "that concern themselves with aggravating factors surrounding the underlying crime itself," such as a dangerous weapon or gang-related enhancer and penalty enhancers that are not "related to the factual circumstances affecting the length" of the sentence, such as a habitual criminality enhancer. This is a distinction without a difference. All of these penalty enhancers link the severity of their sanctions to the maximum term of imprisonment for the underlying offense.

¶ 16. Furthermore, even if the maximum penalty had been overcalculated, which we have determined it was not, Quiroz fails to establish that a plea withdrawal would correct a manifest injustice. Quiroz was sentenced to twelve years in prison, less than the fourteen-year maximum correctly calculated by the court and less than the thirteen-year maximum incorrectly calculated by Quiroz. No matter which way the maximum sentence is calculated, Quiroz received less than the maximum. Furthermore, Quiroz willingly pled guilty to a crime with a fourteen-year maximum penalty; he

---

[2] We must note that in employing the *State v. Pernell*, 165 Wis. 2d 651, 478 N.W.2d 297 (Ct. App. 1991), computation method in this case, the dangerous weapon enhancer and the gang affiliation enhancer produce the same sentence regardless of the sequence in which they are applied. However, in another case, the sequence in which the enhancers are applied might result in different sentences. We caution that this case may not address all factual situations.

253

cannot credibly argue that he would not have so pled had he been informed that the maximum was thirteen years.

¶ 17. The trial court correctly calculated the maximum penalty as fourteen years and Quiroz has not established that plea withdrawal is necessary to correct a manifest injustice.

¶ 18. Quiroz also argues that he should have been allowed to withdraw his plea to the reckless endangerment charge because at the time of the plea he was unaware of the three-year presumptive minimum penalty.

¶ 19. At the time of entry of a plea, a defendant must have a full understanding of the possible penalty, including both the maximum available penalty and any presumptive minimum term of imprisonment. *State v. Mohr*, 201 Wis. 2d 693, 700–01, 549 N.W.2d 497 (Ct. App. 1996). We employ a two-step process when evaluating a trial court's denial of a plea withdrawal motion: first, we read the plea hearing transcript to measure if the defendant has made a prima facie showing that the trial court did not meet the procedures mandated by Wis. Stat. § 971.08.[3] *Mohr*, 201 Wis. 2d at 697. If the defen-

[3] Wisconsin Stat. § 971.08 addresses pleas of guilty and withdrawal thereof and states:

(1) Before the court accepts a plea of guilty or no contest, it shall do all of the following:

(a) Address the defendant personally and determine that the plea is made voluntarily with understanding of the nature of the charge and the potential punishment if convicted.

(b) Make such inquiry as satisfies it that the defendant in fact committed the crime charged.

dant meets this burden, then we test whether the State has nevertheless demonstrated by clear and convincing evidence that the defendant entered the plea knowingly, voluntarily and intelligently. *Id*. While the defendant's understanding must be measured at the time of the plea, we may look to the record as a whole to determine if a defendant understood the consequences of his or her plea at that time. *State v. Van Camp*, 213 Wis. 2d 131, 149, 569 N.W.2d 577 (1997).

¶ 20.   No mention of any presumptive minimum penalty was made at the plea hearing and thus Quiroz has met his initial burden in this respect; the trial court did not meet the procedures mandated by WIS. STAT. § 971.08. The State concedes as much. The next step is to determine whether the State has nevertheless

---

(c) Address the defendant personally and advise the defendant as follows:   "If you are not a citizen of the United States of America, you are advised that a plea of guilty or no contest for the offense with which you are charged may result in deportation, the exclusion from admission to this country or the denial of naturalization, under federal law."

(d) Inquire of the district attorney whether he or she has complied with s. 971.095(2).

(2) If a court fails to advise a defendant as required by sub. (1)(c) and a defendant later shows that the plea is likely to result in the defendant's deportation, exclusion from admission to this country or denial of naturalization, the court on the defendant's motion shall vacate any applicable judgment against the defendant and permit the defendant to withdraw the plea and enter another plea. This subsection does not limit the ability to withdraw a plea of guilty or no contest on any other grounds.

(3) Any plea of guilty which is not accepted by the court or which is subsequently permitted to be withdrawn shall not be used against the defendant in a subsequent action.

demonstrated by clear and convincing evidence that Quiroz entered his plea knowingly, voluntarily and intelligently.

¶ 21. Here, the trial court found that Quiroz had actual knowledge of the presumptive minimum penalty based upon statements made by Quiroz himself and his attorney at the time of sentencing and based upon the presumptive minimum allegations contained in the original pleadings and as conveyed to him at the arraignment. We agree with the trial court's conclusion.

¶ 22. Both the complaint and the information state that the dangerous weapon penalty enhancer carried a presumptive three-year minimum sentence for the first two counts. While Quiroz pled guilty to an amended charge of first-degree reckless endangerment, the dangerous weapon enhancer remained applicable, so logically the three-year presumptive minimum remained applicable as well.[4] Quiroz testified that he was familiar with both the complaint and the information and he was aware that the dangerous weapon enhancer remained in effect at the time of his plea.

¶ 23. In addition, at sentencing the prosecutor remarked that because of the dangerous weapon penalty enhancer, there was a three-year presumptive minimum penalty. Quiroz himself responded that the prosecutor's description of the plea and penalty was correct:

---

[4] We must note that the plea hearing in this case occurred without an amended information in existence. In fact, no amended information was ever filed in this case. Had an amended information been properly filed, we might well not have the confusion claimed by Quiroz in this case.

THE COURT: [I]s the statement of the two crimes for which sentencing is to occur *as the district attorney noted with the penalties including the enhancers,* is that correct?

MR. QUIROZ: Yes.

THE COURT: From your point of view, [defense counsel]?

[DEFENSE COUNSEL]: Yes. (Emphasis added.)

¶ 24. Furthermore, Quiroz's own statements and statements by his defense counsel imply that he was aware of the three-year presumptive minimum penalty. At sentencing, defense counsel asked for "placement in the Wisconsin State Prison for a term not to exceed three years." Quiroz himself said, "I ask no more than five years at least, three years if I could . . . ."

■

¶ 25. Both the complaint and the information contained the dangerous weapon enhancer and set forth the presumptive three-year minimum penalty. Quiroz admitted that he was familiar with both the complaint and the information and was aware that the dangerous weapon enhancer applied when he pled guilty. At sentencing, the prosecutor noted that there was a three-year presumptive minimum penalty and Quiroz agreed with the prosecutor's recitation of the plea and penalty. Both Quiroz and his attorney requested three years' imprisonment. We conclude that the record as a whole demonstrates that Quiroz was aware of the three-year presumptive minimum penalty and thus Quiroz entered his plea knowingly, voluntarily and intelligently.

¶ 26. The trial court correctly calculated the maximum penalty in this case to be fourteen years. Even if we were to accept Quiroz's argument that fourteen years is incorrect, he has not demonstrated that plea withdrawal is necessary to avoid a manifest injustice. In addition, the record demonstrates that Quiroz had actual knowledge of the presumptive three-year minimum penalty and therefore his plea was knowingly, voluntarily and intelligently entered. We therefore affirm the order denying his motion for plea withdrawal and affirm the judgment of conviction.

*By the Court.*—Judgment and order affirmed.