STATE of Wisconsin, Plaintiff-Respondent,

v.

Travis Vondell CROSS, Defendant-Appellant.

Supreme Court

*No. 2009AP3–CR. Oral argument December 1, 2009.*
*—Decided July 8, 2010.*

2010 WI 70

(Also reported in 786 N.W.2d 64.)

494

For the defendant-appellant there were briefs and oral argument by *William E. Schmaal,* assistant state public defender.

For the plaintiff-appellant the cause was argued by *James M. Freimuth,* assistant attorney general, with whom on the briefs was *J.B. Van Hollen,* attorney general.

¶ 1. MICHAEL J. GABLEMAN, J. Travis Vondell Cross pled guilty to second degree sexual assault of a child, and was informed by the State, the circuit court, and his own attorney that this offense was punishable by 40 years imprisonment with a maximum initial confinement of 25 years. The circuit court imposed the maximum sentence. Cross later discovered that he should have been subject to a maximum of only 30 years imprisonment with 20 years initial confinement.

¶ 2. The circuit court denied Cross's postconviction motion requesting a plea withdrawal, but did grant his motion for resentencing, where Cross again received the maximum. Cross appealed, and the State petitioned

this court for bypass pursuant to Wis. Stat. § (Rule) 809.60 (2007–08),[1] which we granted.

¶ 3. The issue before us is whether Cross's plea was knowing, voluntary, and intelligent in spite of the fact that he was told an incorrect maximum potential sentence before entering his guilty plea.

¶ 4. We hold that where a defendant is told that he faces a maximum possible sentence that is higher, but not substantially higher, than that authorized by law, the circuit court has not violated the plea colloquy requirements outlined in Wis. Stat. § 971.08 and our *Bangert* line of cases. In other words, where a defendant pleads guilty with the understanding that he faces a higher, but not substantially higher, sentence than the law allows, the circuit court has still fulfilled its duty to inform the defendant of the range of punishments. Therefore, the defendant is not entitled to an evidentiary hearing, and plea withdrawal remains in the discretion of the circuit court and will not be disturbed unless the defendant shows that it is necessary to correct a manifest injustice.

¶ 5. In this case, Cross was told he faced a maximum exposure of 25 years initial confinement with 15 years extended supervision, when the actual maximum was 20 years initial confinement with 10 years extended supervision. We conclude that Cross pled guilty under the belief that he faced a higher, but not substantially higher, maximum penalty. We hold that as a matter of law, Cross's plea was therefore made knowingly, voluntarily, and intelligently. Moreover, Cross has not demonstrated that withdrawal of his plea is necessary to correct a manifest injustice. Accordingly, the judgment and order of the circuit court is affirmed.

---

[1] All subsequent references to the Wisconsin Statutes are to the 2007–08 version unless otherwise indicated.

## I. BACKGROUND

¶ 6. On December 8, 2005, Cross was charged with first degree sexual assault of a child contrary to Wis. Stat. § 948.02(1) (2001–02).[2] The State alleged that Cross sexually assaulted his ten-year-old great-granddaughter in December 2002 and again in January 2003. At the arraignment, the circuit court informed Cross that the offense was a Class B felony, and that conviction could lead to a maximum sentence of 60 years.

¶ 7. On January 5, 2007, the State entered into a plea agreement with Cross. Cross agreed to plead guilty to a reduced charge of second degree sexual assault (a violation of Wis. Stat. § 948.02(2) (2001–02)[3]), to have no contact with the child or her family, to register as a sex offender, to make necessary restitution, and to agree to lifetime supervision if he lived or worked in Wisconsin at any time in the future. In exchange, the State consented to the single, reduced charge and agreed to recommend a sentence of 24 months to be served concurrently with time he was already serving in Minnesota for similarly violating a minor family member.

¶ 8. At the plea hearing, counsel for Cross informed the circuit court that second degree sexual assault was a Class C felony and that the maximum

[2] Wisconsin Stat. § 948.02(1) (2001–02) reads: "FIRST DE-GREE SEXUAL ASSAULT. Whoever has sexual contact or sexual intercourse with a person who has not attained the age of 13 years is guilty of a Class B felony."

[3] Wisconsin Stat. § 948.02(2) (2001–02) states as follows: "SECOND DEGREE SEXUAL ASSAULT. Whoever has sexual contact or sexual intercourse with a person who has not attained the age of 16 years is guilty of a Class C felony."

total sentence was 40 years, consisting of a maximum initial imprisonment of 25 years followed by 15 years of extended supervision. An attachment to Cross's plea questionnaire and waiver of rights form, which he signed, also stated that the Class C felony carried a maximum sentence of 40 years with a maximum initial confinement in prison for 25 years. During Cross's plea colloquy, Judge Lundell repeated the same maximum punishments for a Class C felony (25 years maximum initial confinement plus 15 years of extended supervision). Judge Lundell also made clear that he would not be bound by "any agreement that the attorneys may have." He then asked Cross if he understood that "in the end, I would make up my mind as to what's best for this case," and that, "I'm not bound by any agreement." To both inquiries, Cross replied, "Yes, sir." After questioning Cross, Judge Lundell found that Cross "freely, voluntarily, and knowingly" waived his rights; he accepted Cross's guilty plea, and set a date for sentencing.

¶ 9. The sentencing hearing occurred on March 26, 2007. The court considered numerous victim impact statements filed in the case. According to those statements, Cross had molested or otherwise sexually assaulted many family members. The court called Cross's pattern of abuse "one of the saddest situations that I have come across." Judge Lundell cited his almost two decades of judicial experience and years of prosecuting before his service on the bench and commented, "It is rare to have an individual your age have affected so many people in the same family."

¶ 10. The court sternly admonished Cross, saying:

Frankly, I have no pity for you whatsoever. I think you should receive a serious sentence. I think that in and of

itself may help some of the misery you have caused, but it will never, of course, heal everything. The only way to deal with a person such as yourself who just—I can't comprehend why you did what you did, but I can deal with it. And my way of dealing with it is, frankly, never letting you out of prison until you die. That's how I deal with it. I don't want to give you any opportunity to molest anyone ever again in your family. . . .

[W]hy bother trying to treat you? I don't think there's any hope for you. You have caused so much harm to your family that this is purely a punishment type case. I gave you, you know, for five seconds, I gave thought to rehabilitation of you. And I quickly dismissed that because, frankly, there's no need to rehabilitate you. For what you have done to your family, you deserve the worst. You deserve to be punished about as hard as I can punish you.

Ultimately, Judge Lundell disregarded the recommendation of the State and sentenced Cross to the maximum 25 years imprisonment followed by 15 years of extended supervision.

¶ 11. Cross moved for postconviction relief on multiple grounds, only one of which is relevant to us today.[4] On the night before the hearing on his postconviction motion, Cross's attorney discovered that the offense occurred prior to the changeover from Truth in Sentencing 1 guidelines ("TIS-1") to Truth in Sentencing 2 guidelines ("TIS-2").[5] Cross had been advised of and sentenced to the maximum according to the TIS-2

[4] Cross's attorney actually discovered the sentencing error several months after filing his original motion for postconviction relief, and made the claim at issue here in a later supplemental motion.

[5] Felonies committed after December 31, 1999, but prior to February 1, 2003, are subject to sentencing requirements established by Part I of Truth-In-Sentencing legislation (TIS-I), 1997

penalties, which classified his offense as a Class C felony with a 40–year maximum, including 25 years of initial confinement. Under the TIS-1 guidelines, the felony should have been treated as Class BC, which carries a maximum initial sentence of 20 years in prison followed by 10 years extended supervision, for a total of 30 years. Cross argued that because he was incorrectly advised of the penalties prior to his guilty plea, his plea was not knowing and intelligent and he was entitled to withdraw his plea.[6]

¶ 12. On March 24, 2008, the circuit court denied Cross's motion for withdrawal of his guilty plea, but did vacate the sentence and order resentencing. Cross was resentenced on July 23, 2008, this time under the correct TIS-1 guidelines. He was sentenced again to the maximum penalty allowed—20 years of initial confinement in prison followed by 10 years of extended supervision.

¶ 13. On December 26, 2008, Cross appealed the judgment of conviction and the denial of his motion for plea withdrawal. The State petitioned this court to bypass the court of appeals, which we granted.

Wis. Act 283. Felonies committed after February 1, 2003, are subject to sentencing requirements established by Part II of Truth-In-Sentencing legislation (TIS-2), 2001 Wis. Act 109. These sentencing requirements were codified in Wis. Stat. § 939.50 (2001–02).

[6] The court was notified of this for the first time during the hearing on Cross's postconviction motion on January 3, 2008. During this hearing, the circuit court allowed Cross's trial attorney and Cross himself to testify, with examination by counsel for the State and by Cross's attorney. The testimony centered on the fact that all parties simply erred in good faith and told Cross the incorrect maximum allowable punishment.

## II. STANDARD OF REVIEW

¶ 14. A plea not entered knowingly, voluntarily, and intelligently violates fundamental due process, and a defendant therefore may withdraw the plea as a matter of right. *State v. Brown,* 2006 WI 100, ¶ 19, 293 Wis. 2d 594, 716 N.W.2d 906. Whether a plea was entered knowingly, voluntarily, and intelligently presents a question of constitutional fact that is reviewed independently. *Id.* In making this determination, this court accepts the circuit court's findings of historical or evidentiary facts unless they are clearly erroneous. *Id.*

## III. DISCUSSION

¶ 15. This case raises a threshold question of how to analyze a claim for plea withdrawal when a defendant was informed that his maximum punishment was higher, but not substantially higher, than the law actually authorized. We address this question in Part A, concluding that this does not constitute a *Bangert* violation, and therefore, the burden is on the defendant in such situations to demonstrate that granting plea withdrawal is necessary to correct a manifest injustice. In Part B, we apply this analytical framework to the facts in the case at bar. We conclude that Cross is not entitled to withdraw his guilty plea.

### A. Analytical Framework

¶ 16. Under the Due Process Clause of the Fourteenth Amendment to the United States Constitution, a defendant's guilty plea must be affirmatively shown to be knowing, voluntary, and intelligent. *Brown,* 293

Wis. 2d 594, ¶ 25. In Wis. Stat. § 971.08, the legislature established certain requirements for ensuring a guilty plea is knowing, voluntary, and intelligent. This court has also provided additional requirements in *State v. Bangert,* 131 Wis. 2d 246, 389 N.W.2d 12 (1986), and subsequent cases. *Brown,* 293 Wis. 2d 594, ¶ 23.

¶ 17. Wisconsin Stat. § 971.08(1)(a) provides:

Before the court accepts a plea of guilty or no contest, it shall do all of the following:

(a) Address the defendant personally and determine that the plea is made voluntarily with understanding of the nature of the charge and the *potential punishment* if convicted. (Emphasis added.)

¶ 18. This court has also required circuit courts to do the following during a plea hearing:

1. Determine the extent of the defendant's education and general comprehension so as to assess the defendant's capacity to understand the issues at the hearing;

2. Ascertain whether any promises, agreements, or threats were made in connection with the defendant's anticipated plea, his appearance at the hearing, or any decision to forgo an attorney;

3. Alert the defendant to the possibility that an attorney may discover defenses or mitigating circumstances that would not be apparent to a layman such as the defendant;

4. Ensure the defendant understands that if he is indigent and cannot afford an attorney, an attorney will be provided at no expense to him;

5. Establish the defendant's understanding of the nature of the crime with which he is charged and the

503

range of punishments to which he is subjecting himself by entering a plea;

6. Ascertain personally whether a factual basis exists to support the plea;

7. Inform the defendant of the constitutional rights he waives by entering a plea and verify that the defendant understands he is giving up these rights;

8. Establish personally that the defendant understands that the court is not bound by the terms of any plea agreement, including recommendations from the district attorney, in every case where there has been a plea agreement;

9. Notify the defendant of the direct consequences of his plea; and

10. Advise the defendant that "If you are not a citizen of the United States of America, you are advised that a plea of guilty or no contest for the offense [or offenses] with which you are charged may result in deportation, the exclusion from admission to this country or the denial of naturalization, under federal law," as provided in Wis. Stat. § 971.08(1)(c).

*Brown*, 293 Wis. 2d 594, ¶ 35 (footnotes omitted). The relevant requirement at issue here is number five, which requires circuit courts to "[e]stablish the defendant's understanding of . . . the *range of punishments* to which he is subjecting himself by entering a plea." *Id.* (emphasis added).

██ ██

¶ 19. If the circuit court fails at one of these duties (also called a "*Bangert* violation"), the defendant may be entitled to withdraw his plea. *Id.*, ¶ 36. A defendant establishes that the circuit court failed at one of its duties by filing a motion (a "*Bangert* motion") that: (1) makes a prima facie showing of a violation of § 971.08(1) or other court-mandated duties; and

(2) alleges that "the defendant did not know or understand the information that should have been provided at the plea hearing." *Id.*, ¶ 39. A defendant attempting to make this prima facie showing must point to deficiencies in the plea hearing transcript; conclusory allegations are not sufficient. *See id.*

¶ 20. Upon making this showing, the defendant is entitled to an evidentiary hearing (known as a "*Bangert* hearing") at which the State must prove by clear and convincing evidence that the defendant's plea was knowing, voluntary, and intelligent despite the deficiencies in the plea hearing. *Id.* If the State cannot meet its burden, the defendant is entitled to withdraw his plea as a matter of right. See *State v. Van Camp*, 213 Wis. 2d 131, 139, 569 N.W.2d 577 (1997). However, if a defendant seeking to withdraw his guilty plea cannot show that the circuit court failed in its duties during the plea hearing, or if the State meets its burden of proving the plea was knowing, voluntary, and intelligent, withdrawal of the plea is left to the discretion of the circuit court and will not be disturbed unless the defendant demonstrates a manifest injustice will result from the court's refusal to allow the plea to be withdrawn. *State v. Trochinski*, 2002 WI 56, ¶ 15, 253 Wis. 2d 38, 644 N.W.2d 891; *State v. Thomas*, 2000 WI 13, ¶ 16, 232 Wis. 2d 714, 605 N.W.2d 836.

¶ 21. In this case, Cross was informed that his maximum punishment was higher than the law actually authorized. The question is whether this constitutes a *Bangert* violation—that is, a failure by the circuit court to fulfill its required duties under § 971.08(1) and our case law during the plea colloquy.

¶ 22. Cross asserts that when the maximum punishment has been incorrectly communicated, and the defendant's understanding was based on this incorrect

information, the defendant has established a *Bangert* violation. Cross further argues that in such a scenario, the State cannot show the plea was knowing, voluntary, and intelligent. The upshot is, according to Cross, if a defendant is told and believes a potential maximum punishment that turns out to be incorrect, the defendant may withdraw the guilty plea as a matter of right. The State counters that the rule is not so black and white.

¶ 23. Two factually similar published court of appeals opinions approach this question in different ways, demonstrating the need for further clarity in the law.

¶ 24. The State finds support for its position in *State v. Quiroz,* 2002 WI App 52, 251 Wis. 2d 245, 641 N.W.2d 715. In that case, the defendant argued that he was entitled to withdraw his guilty plea in part because he was incorrectly informed that his maximum punishment was 14 years instead of 13. *Id.*, ¶ 1. The court of appeals ultimately concluded that the correct penalty was in fact 14 years, and therefore he was not misinformed. *Id.*, ¶ 14. The court then stated:

> Furthermore, even if the maximum penalty had been overcalculated, which we have determined it was not, Quiroz fails to establish that a plea withdrawal would correct a manifest injustice. Quiroz was sentenced to twelve years in prison, less than the fourteen-year maximum correctly calculated by the court and less than the thirteen-year maximum incorrectly calculated by Quiroz. No matter which way the maximum sentence is calculated, Quiroz received less than the maximum. Furthermore, Quiroz willingly pled guilty to a crime with a fourteen-year maximum penalty; he cannot credibly argue that he would not have so pled had he been informed that the maximum was thirteen years.

506

*Id.,* ¶ 16.

¶ 25. Implicit in the court of appeals' analysis is the idea that this scenario would not be a *Bangert* violation, presumably because the defendant would have understood the "range of punishments," even if he was told 14 years and the actual maximum punishment was 13 years.

¶ 26. Cross, on the other hand, looks to *State v. Harden,* 2005 WI App 252, 287 Wis. 2d 871, 707 N.W.2d 173, which presents a factual scenario nearly identical to this case. In *Harden,* the defendant pled guilty pursuant to a plea agreement and was informed that his maximum punishment was 19 years, six months, when the correct maximum exposure was 16 years. *Id.,* ¶ 2. The court imposed a sentence of three years initial confinement and four years extended supervision. *Id.* The defendant moved to withdraw his plea, but the circuit court denied the motion. The circuit court relied on *Quiroz,* finding that the defendant had not presented credible evidence showing that the misinformation affected his plea decision. *Id.,* ¶¶ 1, 3.

¶ 27. The court of appeals reversed. It concluded that the burden was on the State to prove "that Harden knew the correct maximum sentence despite being given erroneous information." *Id.,* ¶ 5. It further stated that under *State v. Bartelt,* 112 Wis. 2d 467, 484, 334 N.W.2d 91 (1983), the defendant need not show that the misinformation affected his plea decision. *Id.,* ¶ 5. Thus, it stated that the earlier holding in *Quiroz* was not in accord with binding supreme court precedent; it was dicta and should not be followed. *Id.,* ¶ 6.

¶ 28. By placing the burden on the State to prove that the defendant knew the precise maximum sentence, the *Harden* court implicitly assumed this was a *Bangert* violation. Its conclusion appears to be premised

on the assumption that any deviation from the precise maximum punishment prevents a plea from being knowing, voluntary, and intelligent.

¶ 29. We begin our analysis with this pronouncement by the United States Supreme Court:

> A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action. . . .
>
> . . . We find no requirement in the Constitution that a defendant must be permitted to disown his solemn admissions in open court that he committed the act with which he is charged simply because it later develops that the State would have had a weaker case than the defendant had thought or that the maximum penalty then assumed applicable has been held inapplicable in subsequent judicial decisions.

*Brady v. United States*, 397 U.S. 742, 757 (1970). In *Brady,* the United States Supreme Court held that even though the maximum punishment—the death penalty —was later held to be unavailable for the charges against Brady, the defendant's guilty plea was nonetheless knowing, voluntary, and intelligent. *Id.* at 756–58. *Brady* therefore teaches that a plea based on an understanding of the precise maximum penalties that ultimately proves incorrect is not necessarily a violation of due process.

¶ 30. In our view, a defendant who has been told a maximum punishment higher, but not substantially higher, than that authorized by law, has not necessarily made a prima facie case that the requirements of § 971.08 and our case law have been violated. Several reasons support our approach.

¶ 31. First, a defendant who believes he is subject to a greater punishment is obviously aware that he may receive the lesser punishment. Thus, the defendant in *Harden,* who was told he faced 19 years, six months maximum exposure, was certainly aware that he faced 16 years imprisonment. Moreover, we do not believe a defendant's decision to represent in open court that he committed the crimes he is charged with is likely to be affected by insubstantial differences in possible punishments.

¶ 32. Second, requiring an evidentiary hearing for every small deviation from the circuit court's duties during a plea colloquy is simply not necessary for the protection of a defendant's constitutional rights. The *Bangert* requirements exist as a framework to ensure that a defendant knowingly, voluntarily, and intelligently enters his plea. We do not embrace a formalistic application of the *Bangert* requirements that would result in the abjuring of a defendant's representations in open court for insubstantial defects.

¶ 33. Third, the great weight of authorities from other state and federal courts reject the notion that the failure to understand the precise maximum punishment is a per se due process violation. Though not uniform in the applicable test, these cases generally put the burden on the defendant to show he was prejudiced or would not have pled guilty had he known the correct possible imprisonment. *See, e.g., United States v. Molina,* 469 F.3d 408, 410–12 (5th Cir. 2006) (holding that the defendant did not demonstrate a reasonable probability that he would not have pled guilty but for the district court's misstatement of the maximum sentence); *Long v. United States,* 883 F.2d 966, 968 (11th Cir. 1989) ("[I]f the court's misstatement was unintentional, and the convicted offender cannot show preju-

dice as a result of the misstatement . . . he will not be granted relief."); *Allen v. United States,* 634 F.2d 316, 317 (5th Cir. 1981) (concluding that an overstatement of the maximum sentence by ten years was not a "material factor" affecting the petitioner's decision to plead guilty, despite the fact that such a contention was stated in the petitioner's affidavit).[7]

¶ 34. Fourth, we find further support for this position in Wis. Stat. § 973.13. That statute provides: "In any case where the court imposes a maximum penalty in excess of that authorized by law, such excess shall be void and the sentence shall be valid only to the extent of the maximum term authorized by statute and

---

[7] *See also United States v. Fuller,* 769 F.2d 1095, 1096 (5th Cir. 1985) (holding that misinformation regarding the maximum sentence did not induce the defendant to enter the plea or prejudice him); *Barton v. United States,* 458 F.2d 537, 541 (5th Cir. 1972) (holding that misinformation regarding the maximum possible sentence did not entitle the defendants to withdraw their pleas because they were voluntarily entered into); *Schofield v. United States,* 441 F.2d 1219, 1221 (7th Cir. 1971) (holding that the defendant's misunderstanding of the possible penalties did not render the defendant's plea unintelligent or involuntary); *Brooks v. State,* 606 So. 2d 615, 616–17 (Ala. Crim. App. 1991) (holding that misinformation regarding the maximum sentence did not entitle the defendant to withdraw her plea because she would not have changed her mind regarding the plea had she been informed of the precise punishment); *Grant v. State,* 585 N.E.2d 284, 285–88 (Ind. Ct. App. 1992) (holding that misinformation regarding the maximum sentence did not entitle the defendant to withdraw his plea because it did not prejudice him); *Commonwealth v. Sherman,* 864 N.E.2d 1241, 1247 (Mass. App. Ct. 2007) (holding that misinformation regarding the maximum sentence did not entitle the defendant to withdraw his plea because the favorable sentencing consequences of the plea rendered the deviation insignificant).

shall stand commuted without further proceedings." Section 973.13 applies when defendants are found guilty, either by plea or by trial. When given a sentence greater than that authorized by law, which presumably would also involve an error in the understanding of the possible maximum penalty, the remedy here is a commuted sentence, not plea withdrawal.

¶ 35. This means that in the exact scenario in the case at bar—a guilty plea where the maximum sentence is miscommunicated to and misunderstood by the defendant—the remedy provided by the Wisconsin legislature is commutation of that portion of the sentence imposed in excess of the actual maximum permitted. Unless the defendant's misinformation amounts to a due process violation, the statutory remedy should govern.

¶ 36. Finally, we see an analogue in Federal Rule of Criminal Procedure 11, which governs pleas. The rule specifies that a court accepting a guilty plea must inform the defendant and ensure the defendant understands "any maximum possible penalty, including imprisonment, fine, and term of supervised release." Fed. R. Crim. P. 11(b)(1)(H). Unlike the Wisconsin Statutes, the federal rules specifically require that the defendant know and understand the "maximum" penalty. Yet, Rule 11(h) states that any "variance from the requirements of this rule is harmless error if it does not affect substantial rights." By clear implication, the failure of the defendant to know and understand the precise maximum is subject to a harmless error test. It is not a per se violation of the defendant's due process rights.

■■■■

¶ 37. It is clear, then, that a defendant's due process rights are not necessarily violated when he is incorrectly informed of the maximum potential imprisonment.

¶ 38. We conclude also that a defendant can be said to understand the range of punishments as required by § 971.08 and *Bangert* when the maximum sentence communicated to the defendant is higher, but not substantially higher, than the actual allowable sentence. This accords with common sense; not all small deviations from the requirements in our *Bangert* line of cases equate to a *Bangert* violation and require a formal evidentiary hearing.[8]

¶ 39. However, when the difference is significant, or when the defendant is told the sentence is lower than the amount allowed by law, a defendant's due process rights are at greater risk and a *Bangert* violation may be established. If a *Bangert* violation is established, the burden falls on the State to prove at an evidentiary hearing that the plea was knowing, voluntary, and intelligent.

¶ 40. Consequently, we overrule *State v. Harden,* 2005 WI App 252, 287 Wis. 2d 871, 707 N.W.2d 173. We also withdraw the language in *State v. Quiroz,* 2002 WI App 52, ¶ 16, 251 Wis. 2d 245, 641 N.W.2d 715, which requires the defendant to show he would have pled differently had he known the correct maximum sentence. Our holding is more straightforward: where the sentence communicated to the defendant is higher, but

---

[8] The concurrence critiques our adoption of a "substantially higher" standard, arguing that such a standard creates a "judicially crafted gray area." Concurrence, ¶ 54. Yet, without any real analysis, the concurrence likewise concludes that Cross's plea was knowing, voluntary, and intelligent. *Id.,* ¶ 59. Thus, whether or not a *Bangert* violation occurred, the concurrence implicitly concedes that insubstantial errors regarding the precise maximum sentence do not implicate a defendant's due process rights.

not substantially higher, than that authorized by law, the incorrectly communicated sentence does not constitute a *Bangert* violation and will not, as a matter of law, be sufficient to show that the defendant was deprived of his constitutional right to due process of law.

### B. Application to Cross

¶ 41. We conclude that Cross has not made a prima facie showing that the circuit court failed to comply with § 971.08 or the requirements outlined in *Brown* and *Bangert* when he was misinformed of the potential maximum punishment. Cross was informed of a punishment *greater than* what the law provided—25 years of initial confinement and 15 years of extended supervision, instead of 20 years of initial confinement followed by 10 years of extended supervision. While the determination of when a difference is "substantial" will depend on the facts of the case, the difference in this case is, in our view, not substantial. We therefore find that Cross did understand the range of punishments and did not make a prima facie showing that the circuit court failed in its duties under § 971.08 and our *Bangert* line of cases. Accordingly, Cross's plea was made knowingly, voluntarily, and intelligently.

¶ 42. We also conclude that Cross has not shown plea withdrawal is necessary to correct a manifest injustice. Before sentencing, the court should permit a plea withdrawal for "any fair and just reason." *State v. Garcia,* 192 Wis. 2d 845, 861, 532 N.W.2d 111 (1995). After sentencing, however, a guilty plea may not be withdrawn unless the defendant proves by clear and convincing evidence that withdrawal is necessary to

correct a manifest injustice. *Thomas,* 232 Wis. 2d 714, ¶ 16. The higher post-sentencing burden reflects the State's interest in the finality of convictions, and reflects the fact that the presumption of innocence no longer exists. *Id.* A manifest injustice occurs when there has been "a serious flaw in the fundamental integrity of the plea." *Id.* (quoting *State v. Nawrocke,* 193 Wis. 2d 373, 379, 534 N.W.2d 624 (Ct. App. 1995)). The only flaw Cross points to is that the plea was made with a misunderstanding of the precise maximum sentence.

¶ 43. We believe Cross's solemn admission in open court that he had sexual contact with his ten-year-old great-granddaughter should not be thrown aside. Cross entered into a highly favorable plea agreement. Under the original charge, first degree sexual assault, Cross understood that he faced a maximum sentence of 60 years. He agreed to plead guilty to second degree sexual assault, which he understood as subjecting him to 40 years imprisonment. In fact, the reduced charge resulting from the plea agreement was even *more* favorable to him than he thought when he entered into it, because it reduced his maximum exposure to 30 years. The record also reflects that the prosecutor could have charged him with multiple counts of first degree sexual assault, which would have likely made the State's case stronger. Cross's plea agreement provided him with benefits that were only enhanced by the reduced maximum sentence.

¶ 44. In short, the burden is on Cross to demonstrate that he should be allowed to withdraw his plea to correct a manifest injustice. Cross has not met that burden, and therefore, his conviction and sentence are affirmed.

## IV. CONCLUSION

¶ 45. We hold that where a defendant is told that he faces a maximum possible sentence that is higher, but not substantially higher, than that authorized by law, the circuit court has not violated the plea colloquy requirements outlined in Wis. Stat. § 971.08 and our *Bangert* line of cases. In other words, where a defendant pleads guilty with the understanding that he faces a higher, but not substantially higher, sentence than the law allows, the circuit court has still fulfilled its duty to inform the defendant of the range of punishments. Therefore, the defendant is not entitled to an evidentiary hearing, and plea withdrawal remains in the discretion of the circuit court and will not be disturbed unless the defendant shows that it is necessary to correct a manifest injustice.

¶ 46. In this case, Cross was told he faced a maximum exposure of 25 years initial confinement with 15 years extended supervision, when the actual maximum was 20 years initial confinement with 10 years extended supervision. We conclude that Cross pled guilty under the belief that he faced a higher, but not substantially higher, maximum penalty. We hold that as a matter of law, Cross's plea was therefore made knowingly, voluntarily, and intelligently. Moreover, Cross has not demonstrated that withdrawal of his plea is necessary to correct a manifest injustice. Accordingly, the judgment and order of the circuit court is affirmed.

*By the Court.*—The judgment and order of the circuit court is affirmed.

¶ 47. SHIRLEY S. ABRAHAMSON, C.J. (*concurring*). I do not join the majority opinion because it unnecessarily departs from Wis. Stat. § 971.08 and this

court's precedents in *State v. Bangert,* 131 Wis. 2d 246, 389 N.W.2d 12 (Wis. 1986), and its progeny, including *State v. Brown,* 2006 WI 100, 293 Wis. 2d 594, 716 N.W.2d 906. *Bangert* was decided in 1986. It was reaffirmed by *Brown* in 2006. The *Bangert* line of cases sets down simple, relatively "bright-line" rules in this area of the law, and there is no indication the framework is not working. Why disturb it now?

¶ 48. I conclude that Cross's motion to withdraw his plea satisfied the two requirements set forth in *Bangert.* Unlike the majority opinion, I conclude that Cross made a prima facie showing of a violation of § 971.08(1)(a) (a "*Bangert* violation"), namely that he was misinformed about the maximum penalties. When a defendant is told that he faces a higher punishment than provided by law and pleads guilty, the plea colloquy is on its face defective under *Bangert.* The defendant's motion contained the proper allegation that he "did not know or understand the information that should have been provided at the plea hearing." I therefore conclude that Cross was entitled to a *Bangert* hearing at which the State had the burden of proof by clear and convincing evidence that the defendant's plea was knowing, voluntary, and intelligent despite the deficiencies in the plea hearing.

¶ 49. Wisconsin Stat. § 971.08(1)(a) requires a circuit court, before accepting a plea of guilty or no contest, to "[a]ddress the defendant personally and determine that the plea is made voluntarily with understanding of the nature of the charge and the *potential punishment if convicted.*"

¶ 50. *Bangert* and *Brown* interpreted "potential punishment if convicted" to mean "the range of punishments to which he [the defendant] is subjecting himself by entering a plea." *Bangert,* 131 Wis. 2d at 261–62;

516

*Brown,* 293 Wis. 2d at 617. When the circuit court does not establish the defendant's understanding of "the range of punishments," the defendant can make a prima facie showing of a "*Bangert* violation," which entitles the defendant to an evidentiary hearing. *See* majority op., ¶¶ 19–20.

¶ 51. In the present case, a hurriedly convened *Bangert* hearing was held in the circuit court. The State had the burden of proving by clear and convincing evidence that the defendant's plea was knowing, voluntary, and intelligent despite the deficiencies in the plea hearing. The State called Cross's trial counsel as a witness. Trial counsel testified that she told the defendant the wrong maximum penalty. Defense counsel called Cross as a witness. Cross stated that he had an incorrect understanding of the penalties when he entered his guilty plea.

¶ 52. What comes through loud and clear from the *Bangert* hearing is that all the participants were acting in good faith and that none of them knew the correct statutory punishment—not the court, not the prosecutor, not the defense counsel, and not the defendant. The problem about the punishment arose because a statute had changed and no one was applying the law in effect at the relevant time.[1] It is hard to conceive that the defendant knew the correct penalty, but none of the legally trained people knew it.

¶ 53. No matter how you cut it, Cross was misinformed about the "potential punishment," the "range of punishments, to which he was subjecting himself by entering a guilty plea. "Potential punishment"[2] or

---

[1] The majority opinion discusses the nature of the mistake at ¶ 11 & nn.5–6.

[2] Wis. Stat. § 971.08(1)(a).

517

"range of punishments"[3] means the precise punishment set forth in the statutes. These phrases do not either say or mean that the defendant should be told the "approximate" statutory punishment. The majority opinion now says these phrases mean, in effect, "close enough for a criminal case."

¶ 54. The majority has established one set of rules for cases in which misinformation about punishment is "not substantially higher" than the statutory punishment and another set of rules for cases in which misinformation about punishment is "substantially higher." *See* majority op., ¶ 4. Neither Wis. Stat. § 971.08 nor any case cited by the majority has previously used a standard of "substantially higher." The majority does not elaborate on the meaning of "substantially higher." The majority opinion has, in my opinion, departed from a clear and simple rule to unnecessarily open a judicially crafted gray area, inviting further litigation centered on the meaning of "substantially higher."[4]

¶ 55. Rather than enter this gray area, I resolve this case by applying the existing framework of the law under Wis. Stat. § 971.08, *Bangert,* and *Brown.* No court has ruled on whether the State carried its burden at the *Bangert* hearing that was held in the present case. The majority fails to do so because it concludes a *Bangert* hearing was not necessary.

¶ 56. The issues under my analysis become two-fold: First, whether the State carried its burden at the *Bangert* hearing to prove by clear and convincing evi-

---

[3] *State v. Brown,* 293 Wis. 2d at 617; majority op., ¶ 18.

[4] *Cf. State v. Imani,* 2010 WI 66, 326 Wis. 2d 179, 786 N.W.2d 40 (Crooks, J., concurring in part & dissenting in part) (discussing *State v. Klessig,* 211 Wis. 2d 194, 564 N.W.2d 716 (1997)).

dence that the defendant's plea was knowing, voluntary, and intelligent despite the deficiencies in the plea hearing; and second, whether the defendant has otherwise carried his burden to show that withdrawal is necessary to correct a manifest injustice, that is, a serious flaw in the fundamental integrity of the plea.[5] Because of the posture of the case, I shall treat these two analyses together.

¶ 57. Although I am concerned that this case is close to the line of inappropriate judicial assumptions and speculations about what a defendant knew, would do, or should have done in deciding whether to enter a guilty plea, I nevertheless conclude, on the basis of the unusual facts of the present case and the limited record, that the defendant's plea was knowing, voluntary, and intelligent and that no constitutional flaw or manifest injustice undermines the integrity of the guilty plea.

¶ 58. Cross had a very favorable plea agreement. His potential punishment on the original charges was 60 years' imprisonment (40 years' initial confinement). The misinformation of the potential punishment on the amended charge was 40 years' imprisonment (25 years' initial confinement). The correct information about the amended information was 30 years' imprisonment (20 years' initial confinement). Thus, once the error was discovered, the plea agreement actually gave Cross a

[5] "When a defendant seeks to withdraw a guilty plea after sentencing, he must prove, by clear and convincing evidence, that a refusal to allow withdrawal of the plea would result in "manifest injustice." One way for a defendant to meet this burden is to show that he did not knowingly, intelligently, and voluntarily enter the plea." *State v. Brown*, 2006 WI 100, ¶ 18, 293 Wis. 2d 594, 716 N.W.2d 906 (2006). Here the primary dispute is whether the plea was entered knowingly, intelligently, and voluntarily.

better deal than it appeared at the time he entered his plea. The plea agreement was also favorable because the prosecutor agreed to recommend only two years' imprisonment concurrent with his existing Minnesota sentence. The fact that the sentencing judge disregarded the prosecutor's recommendation after the defendant entered his plea, *see* majority op., ¶ 10, does not affect whether the plea was knowing, voluntary, and intelligent at the time it was entered.

¶ 59. Under these circumstances, regardless of who has the burden of proof, I cannot conclude that the misinformation about the potential punishment, arising from a good faith mistake of all involved, defeated the knowing, voluntary, and intelligent nature of Cross's guilty plea.

¶ 60. For the foregoing reasons, I concur and write separately.

¶ 61. I am authorized to state that Justice ANN WALSH BRADLEY joins this opinion.