COURT OF APPEALS
DECISION
DATED AND FILED

October 29, 2019

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal Nos.** **2018AP1336-CR**
**2018AP1337-CR**

Cir. Ct. Nos. 2014CF2809
2014CF5487

**STATE OF WISCONSIN**

**IN COURT OF APPEALS**
**DISTRICT I**

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

LAVELL JAMES CAMMON,

DEFENDANT-APPELLANT.

APPEALS from judgments and orders of the circuit court for Milwaukee County: MEL FLANAGAN and CYNTHIA MAE DAVIS, Judges. *Judgment modified and, as modified, affirmed; judgment affirmed; orders affirmed.*

Before Brash, P.J., Kloppenburg and Dugan, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.   Lavell James Cammon appeals from the judgments of conviction, following his guilty pleas to one count of false imprisonment, as a domestic abuser, as a repeater in Milwaukee County case No. 2014CF2809;[1] and one count of felony intimidation of a victim, as a party to a crime, as a domestic abuser in Milwaukee County case No. 2014CF5487.   He also appeals the orders denying his postconviction motions.[2]

¶2    Cammon argues that, because he was misinformed about the maximum penalties associated with both charges to which he pled guilty, his pleas were not knowing, intelligent, and voluntary and, therefore, the postconviction court erred in denying his motion to withdraw his pleas.   He also argues that trial

---

[1] Cammon entered pleas to both charges as a repeater.   However, at sentencing, the parties agreed that the repeater enhancer did not apply to either charge.   The trial court then stated that the judgment of conviction in Milwaukee County case No. 2014CF2809 (the first case that the State brought against Cammon) needed to be amended to remove the repeater allegation.

However, contrary to the trial court's oral pronouncement, the judgment in case No. 2014CF2809, cites the repeater statute and includes the phrase "[r]epeater."   We direct the trial court to correct this scrivener's error in that judgment of conviction in the first case upon remittitur.   *See State v. Prihoda*, 2000 WI 123, ¶29, 239 Wis. 2d 244, 618 N.W.2d 857 (stating "In Wisconsin, an unambiguous oral pronouncement of sentence controls over a written judgment of conviction").

[2] The judgments and orders involved in this appeal were entered in two cases that the trial court consolidated for trial.   The first case filed against Cammon, case No. 2014CF2809, is appellate case No. 2018AP1336.   The second case against Cammon, Milwaukee County case No. 2014CF5487, is appellate case No. 2018AP1337.   Two Milwaukee County Circuit Court judges presided over the consolidated cases.   The Honorable Mel Flanagan presided over the cases through sentencing and the Honorable Cynthia Mae Davis presided over the postconviction proceedings.   We refer to Judge Flanagan as the trial court and Judge Davis as the postconviction court.

On August 21, 2018, we granted Cammon's motion to consolidate the appeals.

2

counsel was constitutionally ineffective because (1) trial counsel failed to accurately inform him of the maximum penalties associated with each charge; and (2) prior to sentencing, trial counsel did not request additional time to confer with him to determine if he wanted to withdraw his pleas. We are not persuaded.

¶3 We modify the judgment in the first case, affirm both that judgment as modified and the judgment in the second case, and affirm the postconviction court's orders.

## BACKGROUND

### *The first case—case No. 2014CF2809—false imprisonment*

¶4 The morning of June 26, 2014, began with Cammon calling T.K., his long time girlfriend with whom he had two children and was expecting a third, a "Bitch" and stating, "[W]hy did you leave the room, I told you [that] you are not to leave without my permission." Cammon then hit T.K.'s back and the back of her head five or six times. Cammon also threatened to kill T.K. and the children saying, "I told you bitch, I'm going to buy my heat on Friday when I get my check and I'm going to kill yo[ur] ass, I'll kill you and these mutha fucken [sic] kids bitch" (third set of brackets added). This was not an isolated incident. T.K. told the police that every night Cammon taped the windows or placed towels on them, he taped their bedroom door so he could check whether she had attempted to leave the room, and he usually brought screwdrivers or knives into their bed and threatened her with them.

¶5 The State filed a five count criminal complaint on June 30, 2014, charging Cammon with the following crimes against T.K.: (1) felony intimidation of a victim, as an act of domestic abuse, as a repeater; (2) false imprisonment, as

an act of domestic abuse, as a repeater; (3) felony intimidation of a victim, as an act of domestic abuse; (4) misdemeanor battery, as an act of domestic abuse; and (5) disorderly conduct, as an act of domestic abuse.[3]  The repeater allegations relied on Cammon's May 2007 conviction for being a felon in possession of a firearm.  Cammon was released from prison for that conviction on March 31, 2009.  A certified copy of the judgment of conviction was attached to the complaint.

¶6    Count three, felony intimidation of a victim as an act of domestic abuse, was dismissed at Cammon's initial appearance.[4]

### The second case—case No. 2014CF5487—witness intimidation

¶7    While Cammon was in jail on the first case awaiting trial, he made at least seven telephone calls to his mother and aunt, instructing them how to discourage T.K. from cooperating with the prosecution.  The State filed a criminal complaint on December 10, 2014, charging Cammon with one count of felony intimidation of a victim, as a party to a crime, as an act of domestic abuse.

### Trial court proceedings

¶8    At a December 19, 2014 hearing, the trial court found that probable cause supported the intimidation of a witness charge in the second case, and

---

[3]  The allegations of the first count were based on a December 28, 2013 incident, and the allegations of the four remaining counts were based on the June 26, 2014 incident.

[4]  The dismissed count was subsequently included in an information filed in the first case; however, at a July 29, 2014 hearing, the trial court granted trial counsel's oral motion to dismiss the count, without objection from the State.

granted the State's request to consolidate the two cases for trial. The State then filed an information adding the repeater penalty enhancer to the second case.

¶9      On the first day of the trial, March 16, 2015, the trial court started jury selection. On March 17, 2015, before the jury selection resumed, the parties advised the trial court that they had reached a plea agreement. After the prosecutor described the plea agreement terms, the trial court followed with a lengthy plea colloquy which included asking Cammon if (1) he agreed with prosecutor's description of the plea agreement; (2) he had sufficient time to talk to trial counsel; (3) trial counsel had discussed with him the plea questionnaire and waiver of rights forms,[5] the charges, and the elements of the offenses; (4) he understood the elements of the offenses and what he was admitting by pleading guilty; and (5) if anyone had made any promises to him to induce his pleas, other than those in the plea agreement, and if he was voluntarily admitting the charges.

¶10     The trial court explained the two charges to which Cammon was pleading guilty; the factual basis for those charges; and the penalties for the false imprisonment charge, which was "a fine of up to $10,000 and incarceration for up to ten years or both," and the witness intimidation charge, which was "a fine of not more than $25,000 and imprisonment for not more than [fourteen] years." The trial court also asked Cammon if he understood that the dismissed charges would be read in and considered at sentencing. Cammon responded, "Yes." The trial

---

[5] The plea questionnaire and waiver of rights forms signed by Cammon state that Cammon understood and had reviewed with trial counsel the "entire document and any attachments," and understood that the trial judge could impose the maximum penalty. The form in the first case states that the maximum penalty was six years in prison and/or a $10,000 fine, and that the repeater added four years. The form in the second case states that the maximum penalty was ten years in prison and that the repeater added four years.

court next asked Cammon if the facts in the false imprisonment charge were correct and Cammon denied them. The trial court then directed the court staff to bring the jurors into the courtroom so that jury selection could continue.

¶11 Meanwhile, Cammon conferred with trial counsel and, before the jurors arrived at the courtroom, Cammon agreed to the facts alleged in the complaints for the charges of false imprisonment, as an act of domestic abuse, as a repeater; and the charge of witness intimidation, as a party to a crime, as an act of domestic abuse, as a repeater. The trial court then asked Cammon whether he understood that each party could recommend the sentence to be imposed, and that the trial court would impose the sentence it believed appropriate, which could be the maximum sentence. Cammon responded, "Yes." The trial court found that Cammon's guilty pleas had been entered freely, voluntarily, and intelligently and accepted his guilty pleas.

¶12 Subsequently, Cammon wrote a letter to the trial judge indicating that the repeater enhancers could not be applied in his cases because more than five years passed since his June 2014 arrest for the current offenses and his March 31, 2009 prison release for his most recent prior offense. Cammon was correct but for the wrong reason.[6]

---

[6] Cammon's letter refers to his April 3, 2007 *arrest* for the prior felony offense. However, as relevant here, the five-year period is calculated *from the date of the prior felony conviction* to the date of the commission of the current offense. *See State v. Farr*, 119 Wis. 2d 651, 657, 350 N.W.2d 640 (1984) (stating that "[i]n analyzing the five-year period for the application of the repeater statute, [WIS. STAT. §] 939.62(2) [1981-82], requires that the *conviction of the earlier felony* be considered and compared to the *commission date of the present crime* for which he is being sentenced"). At sentencing and on appeal, the State agreed that the repeater enhancers do not apply because Cammon's prior felony conviction occurred more than five years before the dates that he committed the two crimes to which he pled guilty.

(continued)

¶13 As noted, at the June 3, 2015 sentencing hearing, the prosecutor and trial counsel agreed that Cammon could not be convicted as a repeater for either offense. The trial court then stated, "So we need to amend the judgment of conviction [so] that it's not a repeater." The prosecutor also stated that, although the enhancer did not apply to Cammon, the presentence investigation report listed the correct maximum penalties that Cammon faced without the repeater enhancers.

¶14 The prosecutor recommended eight years of initial confinement, followed by eight years of extended supervision. Trial counsel recommended eighteen to twenty-four months of initial confinement, followed by an unspecified period of extended supervision.

¶15 When Cammon addressed the trial court, he apologized to T.K., his family, and the court. Cammon stated that he took "full responsibility" for his actions, but he also denied falsely imprisoning T.K., stating that he never held T.K. against her will. When questioned by the trial court, Cammon could not explain why, despite entering guilty pleas to the offense, he was saying that he had not committed them. The trial court questioned Cammon's credibility because what he said differed from day to day. Cammon did not move to withdraw his pleas at that time.

¶16 After explaining its reasoning, the trial court imposed a global sentence of eight years of initial confinement followed by eight years of extended supervision. Cammon interjected, "Eight years. You gave me eight years for something I didn't do." Cammon then became loud, disruptive, threatening, and

All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

profane. Although the sentencing was incomplete, Cammon was removed from the courtroom. The following week, the trial court reconvened the sentencing, with Cammon appearing by video conference. After the trial court finished the sentencing, Cammon asked the trial court, "How would it be possible for me to withdraw the plea after being sentenced?" The trial court responded that Cammon should talk to his trial counsel. Judgments were entered in both cases on June 11, 2015.

### *Postconviction proceedings*

¶17 Cammon filed postconviction motions, raising the same claims that he raises on appeal. The postconviction court denied the motions, without a hearing. This appeal follows.

## DISCUSSION

¶18 Cammon argues that because the repeater enhancers did not apply to him on either charge, the trial court misstated the maximum penalty on each charge. He then argues that the trial court's misstatement of the penalty for each charge was substantial and, as a result, the postconviction court erroneously concluded that his pleas were voluntarily entered. He also argues that trial counsel was constitutionally ineffective because (1) trial counsel misstated the maximum penalty associated with each charge; and (2) trial counsel did not request additional time to confer with him to determine if he wanted to withdraw his pleas in light of the misstatement of the maximum penalties, and to explain the differences in the legal standards for withdrawing a plea prior to sentencing versus after sentencing.

**I.    Cammon failed to show that the trial court committed a *Bangert*[7] violation during his plea**

¶19    This case raises the threshold question of how to analyze a claim for plea withdrawal when a defendant was informed that his maximum punishment was higher, but not substantially higher, than the law actually authorized. Our supreme court addressed that question in *State v. Cross*, 2010 WI 70, 326 Wis. 2d 492, 786 N.W.2d 64. We first review the analytical framework set forth in *Cross*, and next apply that analytical framework to the facts in this case and conclude that Cammon is not entitled to withdraw his plea.

***The applicable law and the standard of review involving plea withdrawal***

¶20    As explained in *State v. Brown*, Cammon has the following burden of proof on his motion to withdraw his pleas:

> When a defendant seeks to withdraw a guilty plea after sentencing, he must prove, by clear and convincing evidence, that a refusal to allow withdrawal of the plea would result in "manifest injustice." One way for a defendant to meet this burden is to show that he did not knowingly, intelligently, and voluntarily enter the plea.
>
> When a guilty plea is not knowing, intelligent, and voluntary, a defendant is entitled to withdraw the plea as a matter of right because such a plea "violates fundamental due process."

See *id.*, 2006 WI 100, ¶¶18-19, 293 Wis. 2d 594, 716 N.W.2d 906 (citations omitted).

---

[7] *State v. Bangert*, 131 Wis. 2d 246, 261-62, 389 N.W.2d 12 (1986).

¶21 Addressing the standard of review for a motion to withdraw a plea, the **Brown** court stated, "[w]hether a plea is knowing, intelligent, and voluntary is a question of constitutional fact. We accept the circuit court's findings of historical and evidentiary facts unless they are clearly erroneous but we determine independently whether those facts demonstrate that the defendant's plea was knowing, intelligent, and voluntary." *See id.*, ¶19 (citation omitted).

¶22 In WIS. STAT. § 971.08, the legislature established certain requirements that trial courts must follow when taking a plea. Further, our supreme court provided additional requirements in **State v. Bangert**, 131 Wis. 2d 246, 261-62, 389 N.W.2d 12 (1986), and **Brown**, 293 Wis. 2d 594, ¶35, among other cases. The relevant requirement at issue in this case is that the trial court must "[e]stablish the defendant's understanding of … the range of punishments to which he is subjecting himself by entering a plea[.]" *See Brown*, 293 Wis. 2d 594, ¶35.

> If the circuit court fails at one of these duties (also called a **Bangert** violation), the defendant may be entitled to withdraw his plea. A defendant establishes that the circuit court failed at one of its duties by filing a motion (a **Bangert** motion) that: (1) makes a prima facie showing of a violation of [WIS. STAT.] § 971.08(1) or other court-mandated duties; and (2) alleges that "the defendant did not know or understand the information that should have been provided at the plea hearing." A defendant attempting to make this prima facie showing must point to deficiencies in the plea hearing transcript; conclusory allegations are not sufficient.

*Cross*, 326 Wis. 2d 492, ¶19 (internal citations omitted).

¶23 In this case, the parties agree that Cammon was informed that his maximum punishment was higher than the law actually authorized. As the court in *Cross* stated, "[t]he question is whether this constitutes a **Bangert** violation—

that is, a failure by the circuit court to fulfill its required duties under [WIS. STAT.] § 971.08(1) and our case law during the plea colloquy." *See Cross*, 326 Wis. 2d 492, ¶21.

¶24 Like Cross, Cammon asserts that because he was told the incorrect maximum punishment and his understanding of the maximum was based on that incorrect information, he has established a *Bangert* violation. He argues that he did not understand the penalties for his crimes because the trial court advised him that the maximum prison exposure was twenty-four years—not the actual allowable maximum sentence of sixteen years. Citing *Cross*, the State argues that Cammon's claim fails because the trial court's misstatement regarding the maximum prison exposure was an insubstantial deviation that did not result in a manifest injustice. *See id.*, 326 Wis. 2d 492, ¶¶31-32. As we will explain, we conclude that the trial court's misstatement of the maximum penalties was an insubstantial deviation which does not warrant any type of relief. *See id.*

¶25 *Cross* holds that when a defendant is informed that the maximum possible penalty is higher, but not substantially higher, than the actual maximum authorized by law, the defendant may nevertheless enter his or her plea knowingly, intelligently, and voluntarily, because he or she adequately understands the range of punishments he or she faces. *Id.*, ¶38. Thus, a plea based on a misunderstanding of the precise maximum penalty does not necessarily result in a manifest injustice. *Id.*, ¶¶36-37.

¶26 In *Cross*, the defendant pled guilty to second-degree sexual assault of a child. *Id.*, ¶1. The State, trial counsel, and the trial court incorrectly informed Cross, before he entered his plea, that the maximum penalty for his offense was forty years of imprisonment—not the actual statutory maximum of thirty years of

11

imprisonment. *Id.*, ¶¶1, 3. The issue on appeal was whether Cross's plea was knowing, intelligent, and voluntary. *See id.*, ¶3.

¶27 In *Cross*, our supreme court stated that "[i]n our view, a defendant who has been told a maximum punishment higher, but not substantially higher, than that authorized by law, has not necessarily made a prima facie case that the requirements of [WIS. STAT.] § 971.08 and our case law have been violated." *Cross*, 326 Wis. 2d 492, ¶30. It explained, in part, that

> a defendant who believes he is subject to a greater punishment is obviously aware that he may receive the lesser punishment. ... Moreover, we do not believe a defendant's decision to represent in open court that he committed the crimes he is charged with is likely to be affected by insubstantial differences in possible punishments.

*Id.*, ¶31. The *Cross* court further explained that

> requiring an evidentiary hearing for every small deviation from the circuit court's duties during a plea colloquy is simply not necessary for the protection of a defendant's constitutional rights. The *Bangert* requirements exist as a framework to ensure that a defendant knowingly, voluntarily, and intelligently enters his plea. We do not embrace a formalistic application of the *Bangert* requirements that would result in the abjuring of a defendant's representations in open court for insubstantial defects.

*Cross*, 326 Wis. 2d 492, ¶32.

¶28 The *Cross* court went on to state that pursuant to WIS. STAT. § 973.13, "[w]hen given a sentence greater than that authorized by law, which presumably would also involve an error in the understanding of the possible maximum penalty, the remedy here is a commuted sentence, not plea withdrawal." *Cross*, 326 Wis. 2d 492, ¶34. The *Cross* court then concluded:

> We hold that where a defendant is told that he faces a maximum possible sentence that is higher, but not substantially higher, than that authorized by law, the circuit court has not violated the plea colloquy requirements outlined in [WIS. STAT.] § 971.08 and our *Bangert* line of cases. In other words, where a defendant pleads guilty with the understanding that he faces a higher, but not substantially higher, sentence than the law allows, the circuit court has still fulfilled its duty to inform the defendant of the range of punishments. Therefore, the defendant is not entitled to an evidentiary hearing, and plea withdrawal remains in the discretion of the circuit court and will not be disturbed unless the defendant shows that it is necessary to correct a manifest injustice.

*Cross*, 326 Wis. 2d 492, ¶45.

¶29 We conclude that *Cross* is controlling under the facts in this case.[8]

### Application of Cross to Cammon

¶30 At the start, we note that the only flaw that Cammon points to when he entered his pleas was that the pleas were made with the misunderstanding of the precise maximum sentences for his charges. We conclude that Cammon has not

---

[8] The postconviction court rejected Cammon's claim that he was incorrectly informed of the maximum penalties for his charges. It held that the trial court correctly informed Cammon of the maximum penalties for the charges as they existed at the time of the plea—at the time of the plea the charges included the repeater enhancers. It then held that Cammon could not state a claim for a *Bangert* violation based on post-plea proceedings. However, the postconviction court also went on to apply the holding in *Cross* and concluded that the difference between the maximum sentences that the trial court informed Cammon about at the plea hearing were not significantly higher the actual allowable maximum sentences for his charges.

In his brief on appeal Cammon states that he disagrees with the postconviction court's logic that he was properly informed of the maximum penalties at the time of his pleas. Given our conclusion that there was no *Bangert* violation, because under the facts of this case the difference between the maximum sentences that the trial court informed Cammon of at the plea hearing were not significantly higher than the actual allowable maximum sentences for his charges, we need not address this issue. *See **State v. Blalock***, 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989) (stating that appeals should be decided on the narrowest possible grounds).

made a prima facie showing that the trial court failed to comply with WIS. STAT. § 971.08 or the requirements outlined in *Brown* and *Bangert* when it misinformed him of the potential maximum penalty. Like Cross, Cammon was informed of a punishment greater than what the law provided—twenty-four years of imprisonment, instead of the actual maximum sentence of sixteen years of imprisonment. In *Cross*, Cross was told that the maximum period of imprisonment was forty years, instead of the actual maximum sentence of thirty years of imprisonment for his charges. *Id.*, 326 Wis. 2d 492, ¶1.

¶31 Like Cross, Cammon admitted committing his crimes and he pled guilty to them. *See id.*, ¶¶7-8. Furthermore, Cammon benefited from the plea agreement because the State's dismissal of three charges reduced Cammon's potential prison time by a total of eleven years and six months. When Cammon entered his pleas, he believed that he was facing a maximum of twenty-four years of imprisonment. However, like Cross, after entering his pleas, Cammon discovered that he received an even better deal because he faced no more than sixteen years of imprisonment. *See id.*, ¶43. The trial court's misstatement in this case, ultimately, worked to Cammon's benefit and is precisely the type of insubstantial deviation contemplated by *Cross*. *See id.*, ¶41.

### *Cammon's attempt to distinguish Cross fails*

¶32 Cammon attempts to distinguish *Cross* by asserting that Cross was facing additional multiple uncharged counts of first-degree sexual assault of a child, in addition to the one he pled to. Cammon argues that in contrast to Cross, he was "charged in a very aggressive manner with four charges related to his assault" in the first case. However, Cammon ignores the fact that, pursuant to the plea agreement, the State dismissed one count of felony intimidation of a victim

14

and two other counts in the first case which reduced Cammon's potential prison exposure by a total of eleven years and six months. ***Cross*** is not distinguishable.

### *Cammon's attempt to show that he did not understand the range of penalties also fails*

¶33 On appeal, Cammon also seems to argue that other facts in the record "are appropriate to consider when determining what is substantial." He asserts that his "conduct in [c]ourt was such that his competency needed to be resolved by a doctor's report and that he needed to appear by remote hookup to hear the conclusion of his sentencing hearing" (record citations omitted). Cammon also asserts that at the plea hearing he confirmed that he suffered from bipolar disorder and that he was taking medications for the disorder. He then states that after he had completed the plea forms, he maintained his innocence. He goes on to assert that "[t]he manner in which his pleas were taken thereafter also must raise questions as to their validity and are appropriate to consider when determining what is substantial."

¶34 Cammon's assertions are merely conclusory. He simply states that the foregoing facts should be considered when determining what is substantial. Cammon does not develop the argument and we decline to develop it for him. *See* ***State v. Pettit***, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992). Further, if Cammon is arguing that the facts that he asserted above show that he did not understand the range of penalties that he faced, he did not make that allegation in his postconviction motions. "[W]e will review only the allegations contained in the four corners of [Cammon's] postconviction motion[s], and not any additional allegations that are contained in [his appellate] brief." *See* ***State v. Allen***, 2004 WI 106, ¶27, 274 Wis. 2d 568, 682 N.W.2d 433.

¶35     Cammon also appears to suggest that the trial court had an obligation to advise him "of his right to seek a plea withdrawal prior to his sentencing." Cammon does not cite any authority for this argument and does not develop the argument. We decline to develop it for him. *See Pettit*, 171 Wis. 2d at 646-47.

¶36     Based on the above, we conclude that Cammon understood the range of punishments and that he did not make a prima facie showing that the trial court failed in its duties under WIS. STAT. § 971.08 and the *Bangert* line of cases. Accordingly, we conclude that Cammon's pleas were made knowingly, intelligently, and voluntarily, and that he has not demonstrated that a manifest injustice would result if he were not allowed to withdraw his plea.

## II.     Cammon has not sufficiently alleged a claim of ineffective assistance of trial counsel

¶37     Cammon also argues that trial counsel was constitutionally ineffective because (1) trial counsel misstated the maximum penalties associated with each charge; and (2) trial counsel did not request additional time to confer with him to determine if he wanted to withdraw his pleas in light of the misstatement of the maximum penalties, and to explain the differences in the legal standards for withdrawing a plea prior to sentencing versus after sentencing.

### *Applicable law*

¶38     To establish a claim of constitutionally ineffective assistance of counsel, a defendant must establish the following two components: (1) trial counsel's performance was deficient; and (2) the deficient performance resulted in prejudice to the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A reviewing court may decide an ineffective assistance of counsel claim by analyzing either component. *Id.* at 697. Wisconsin courts have adopted the

16

United States Supreme Court's two-pronged *Strickland* test to analyze claims of ineffective assistance of counsel. *State v. Williams*, 2015 WI 75, ¶74, 364 Wis. 2d 126, 867 N.W.2d 736.

¶39 To establish that trial counsel's performance was deficient, a defendant must show that under all the circumstances trial counsel's performance fell "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

¶40 In *State v. Burton*, our supreme court explained that

> [t]o establish prejudice in the context of a postconviction motion to withdraw a guilty plea based upon ineffective assistance of counsel, the defendant must allege that "but for the counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." [*State v.*] *Bentley*, 201 Wis. 2d [303,] 312, 548 N.W.2d 50 [1996] (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

*See Burton*, 2013 WI 61, ¶50, 349 Wis. 2d 1, 832 N.W.2d 611. Moreover, courts in Wisconsin have

> long held that the facts supporting plea withdrawal must be alleged in the petition and the defendant cannot rely on conclusory allegations, hoping to supplement them at a hearing. A defendant must do more than merely allege that he would have pled differently; such an allegation must be supported by objective factual assertions.

*State v. Bentley*, 201 Wis. 2d 303, 313, 548 N.W.2d 50 (1996) (internal citation omitted). "[A] defendant should provide facts that allow the reviewing court to meaningfully assess his or her claim." *Id.* at 314.

17

¶41    The **Bentley** court also noted that, although it was not bound by federal case law, it considered **Santos v. Kolb**, 880 F.2d 941, 943 (7th Cir. 1989) instructive in Bentley's case. **Bentley**, 201 Wis. 2d at 314. In **Kolb**, the court held that "[a] specific explanation of *why* the defendant alleges he would have gone to trial is required." **Bentley**, 201 Wis. 2d at 314 (quoting **Kolb**, 880 F.2d at 943).

¶42    We next review Cammon's postconviction motions' allegations regarding his ineffective assistance of trial counsel claim to determine if Cammon sufficiently alleged prejudice.

### *Cammon failed to sufficiently allege prejudice*

¶43    Cammon alleges that trial counsel incorrectly informed him of the maximum penalties at the time he pled guilty and that trial counsel was ineffective for failing to advise him that he could move to withdraw his pleas prior to sentencing, when it became clear that he was misinformed of the maximum penalties for his charges. However, the only allegation in Cammon's postconviction motions relating to whether he was prejudiced by trial counsel's deficient performance was his statement that "Mr. Cammon was prejudiced by this ineffective representation and the result was a manifest injustice."[9]

---

[9] In his appellate brief Cammon also states that he was "sufficiently prejudiced" because he now faces the higher "manifest injustice" standard for withdrawing his guilty pleas rather than the lower "fair and just reason" standard that applies to plea withdrawals prior to sentencing. He also asserts,

> [t]here can be no doubt that any defendant when informed of the maximum penalties they could receive is impacted to some extent. It is at this time that the fear of such a penalty can easily influence that party to accept a plea proposal, perhaps when they should not do so.

(continued)

¶44     In response, the State argues that Cammon's motions, at most, only developed the first prong of the *Strickland* test, which requires a showing that Cammon's trial counsel performed outside the wide range of professionally competent assistance.  The State then emphasizes that Cammon failed to establish the second prong of the test, which requires a showing of prejudice.  It argues that Cammon had to allege facts demonstrating that, but for his trial counsel's ineffective representation, he would not have accepted the plea agreement and would have chosen to go to trial on all five charges.  *See **Hill v. Lockhart***, 474 U.S. 52, 58-59 (1985).  Cammon responds to the State's argument in his reply brief stating, "Mr. Cammon responds by arguing that the facts and record presented establish prejudice in themselves.  In addition[,] … he requested a hearing to further present evidence as to this issue and was denied that opportunity by the [t]rial [c]ourt's decision."

¶45     We agree with the State that Cammon failed to sufficiently allege facts demonstrating that, but for trial counsel's alleged deficient performance, he would not have accepted the plea agreement and would have chosen to go to trial on all five charges.  Moreover, Cammon does not refute the State's assertion in his reply brief and, therefore, concedes this issue.  *See **Charolais Breeding Ranches, Ltd. v. FPC Secs. Corp.***, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979) (stating that failure to refute an argument constitutes a concession).

---

Cammon then "submits that it is logical and reasonable that he was prejudiced by this representation."

   "[W]e will review only the allegations contained in the four corners of [Cammon's] postconviction motion[s], and not any additional allegations that are contained in [Cammon's appellate] brief." *See **State v. Allen***, 2004 WI 106, ¶27, 274 Wis. 2d 568, 682 N.W.2d 433.

19

¶46 We, therefore, conclude that the postconviction court properly denied any relief, including a hearing, on Cammon's ineffective assistance of trial counsel claim. We conclude that Cammon's single conclusory, bare-bones statement is not sufficient to require an evidentiary hearing and would not allow the postconviction court to meaningfully assess his claim that he was prejudiced by the misinformation.

## CONCLUSION

¶47 In sum, we modify the judgment in the first case, and affirm that judgment, as modified; and affirm the judgment in the second case. We also conclude that the postconviction court properly denied, without a hearing, Cammon's motions seeking an order allowing him to withdraw his guilty pleas as not being knowingly, intelligently, and voluntarily entered and because trial counsel's representation was constitutionally ineffective. Therefore, we affirm the postconviction court's orders.

*By the Court.*—Judgment modified and, as modified, affirmed; judgment affirmed; orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.