**COURT OF APPEALS
DECISION
DATED AND FILED**

**June 23, 2020**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2019AP49-CR**

**STATE OF WISCONSIN**

Cir. Ct. No. 2015CF163

**IN COURT OF APPEALS
DISTRICT III**

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

RUSSELL L. WILSON,

   DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Washburn County: EUGENE D. HARRINGTON, Judge. *Reversed and cause remanded with directions*.

Before Stark, P.J., Hruz and Seidl, JJ.

¶1 HRUZ, J. Russell Wilson appeals a judgment of conviction for repeated sexual assault of a child and an order denying his postsentencing motion for plea withdrawal. Wilson contends the Information, his attorney, the plea

questionnaire, and the circuit court during the plea hearing all incorrectly stated that Wilson's maximum possible sentence was life in prison without the possibility of extended supervision. Wilson also asserts the State failed to introduce any evidence that, at the time he pled, he knew the correct maximum sentence he faced—which was forty years' imprisonment, comprised of twenty-five years' initial confinement and fifteen years' extended supervision. Accordingly, Wilson asserts his guilty plea was not knowingly, intelligently and voluntarily entered, and he is therefore entitled to withdraw his plea pursuant to *State v. Bangert*, 131 Wis. 2d 246, 389 N.W.2d 12 (1986), and its progeny. We agree.

¶2     We conclude that, generally, a defendant who is incorrectly told during a plea colloquy, and who otherwise understands, that the maximum sentence for his or her crime is life in prison without the possibility of extended supervision, when in fact the maximum sentence is twenty-five years initial confinement and fifteen years' extended supervision, has been advised of a maximum penalty that is substantially higher than the actual penalty. This conclusion is compelled by the unique nature of a potential sentence that largely assures the individual will die while incarcerated, as compared to a sentence that provides that individual with a reasonable possibility of release from confinement under the correct maximum. Such a reasonable possibility exists here, given Wilson's age at the time he was sentenced. We therefore reverse both Wilson's judgment of conviction and the circuit court's order denying his motion for postconviction relief. We remand for further proceedings, directing that Wilson be allowed to withdraw his guilty plea.

**BACKGROUND**

¶3    In December 2015, Wilson was charged with repeated second-degree sexual assault of a child, contrary to WIS. STAT. §§ 948.02(2) and 948.025(1)(e) (2017-18).[1]  The complaint accurately reflected that this offense was a Class C felony that carried a maximum sentence of forty years' imprisonment, which, by statute, can be comprised of no more than twenty-five years' initial confinement and fifteen years' extended supervision.  *See* WIS. STAT. §§ 939.50(3)(c); 973.01(2)(b)3. and (2)(d)2.  The complaint did not charge Wilson with any sentence enhancer.

¶4    At the conclusion of the preliminary hearing, the circuit court stated that Wilson faced a potential sentence of forty years' imprisonment.  The court then stated:  "I think there's also a penalty enhancer here because … if the state proves a repeater status, there's life imprisonment under [WIS. STAT. §] 940.225(1), and I also think there's a minimum mandatory [twenty-five] years confinement.  That's not reflected in the Information."[2]  Wilson then pleaded not guilty.

¶5    The Information filed the same day as the preliminary hearing again charged Wilson with violating WIS. STAT. § 948.025(1)(e), and it correctly noted that the maximum potential sentence was forty years' imprisonment.  The Information, however, further stated that under WIS. STAT. § 939.618(2)(b),

---

[1]  All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

[2]  In fact, there does not appear to be a mandatory minimum sentence for a violation of WIS. STAT. § 948.02(2).  *See* WIS. STAT. § 939.616.

because the defendant was convicted of a previous violation of s. 940.225(1) or for a comparable crime under federal law or the law of any state, 1st Degree Sexual Assault of Child, which conviction remains of record and unreversed, the maximum term of imprisonment for the violation of s. 940.225(1) is life imprisonment without the possibility of parole or extended supervision.

¶6      Wilson eventually entered into a plea agreement with the State. In exchange for his guilty plea, the State agreed it would cap its sentencing recommendation at fifteen years' initial confinement. The plea agreement apparently did not include any agreement regarding the amount of extended supervision the State would recommend, and the prosecutor made no mention of a recommended amount of extended supervision at sentencing.

¶7      On October 13, 2016, Wilson pleaded guilty as charged in the Information, including the penalty enhancer. The plea questionnaire and waiver of rights form, which was signed by Wilson and his attorney, reflected that Wilson was forty-nine years old and that he understood the elements of the charged offense. The form also included a handwritten statement that the charge carried a "maximum of life w/o extended supervision via repeater." The circuit court likewise twice advised Wilson during the plea colloquy that his maximum possible sentence was life without extended supervision. The court then accepted Wilson's guilty plea.

¶8      Wilson was sentenced on December 21, 2016. The State noted at the outset of the hearing that the plea agreement required the State to recommend no more than fifteen years of initial confinement. After listening to defense counsel's arguments and Wilson's apology, the circuit court began its remarks by explaining that the maximum sentence would be forty years' imprisonment but for the penalty enhancer, which increased the maximum penalty to life in prison. The

court ultimately sentenced Wilson to twenty years' initial confinement and twenty years' extended supervision.

¶9 The Department of Corrections subsequently sent the circuit court a letter noting that the enhancer in section WIS. STAT. § 939.618(2)(b) did not apply to Wilson's conviction under section WIS. STAT. § 948.025(1)(e), and that the maximum amount of extended supervision that could be imposed on Wilson was fifteen years. In response, the court commuted the excess five years of extended supervision in an amended judgment of conviction.

¶10 Wilson later moved for postconviction relief, arguing he was entitled to withdraw his plea under ***Bangert*** and ***State v. Cross***, 2010 WI 70, 326 Wis. 2d 492, 786 N.W.2d 64. Wilson asserted the circuit court had incorrectly informed him during his plea colloquy of the maximum sentence he faced, and he requested a hearing on his motion. Specifically, Wilson alleged the maximum sentence he could receive was not life in prison with no extended supervision, but rather was forty years' imprisonment, comprised of twenty-five years' initial confinement and fifteen years' extended supervision.

¶11 After reviewing Wilson's motion, the State agreed that Wilson was entitled to withdraw his plea, and the parties filed a stipulation to that effect. In a subsequent telephonic conference, the circuit court told the parties it would not sign the stipulation, and it scheduled an oral ruling on the motion. Wilson reiterated in a letter sent to the court before the oral ruling the reasons why he was seeking plea withdrawal under ***Bangert*** and related cases.

¶12 At the first hearing on Wilson's motion, the circuit court agreed that Wilson was "entitled to a ***Bangert*** hearing" and that the "State must prove by clear and convincing evidence that [Wilson's] plea was knowing, voluntary, and

intelligent." The court opined that this case was different from *Cross* insomuch as *Cross* did not involve a maximum sentence that was due to a penalty enhancer. The court further noted that "it will be important to hear from three potential witnesses, the defendant, Wilson; Tom Frost, who was the prosecutor; and potentially Chris Gramstrup, who was the defense attorney."

¶13     At the subsequent evidentiary hearing, the parties agreed that the penalty enhancer discussed throughout the plea process did not apply in Wilson's case and that he had been incorrectly informed otherwise. The parties disagreed as to whether those circumstances constituted a manifest injustice entitling Wilson to plea withdrawal. The State called Wilson's trial attorney, Christopher Gramstrup, as its only witness. The State focused its questioning on Wilson's decision to enter into the plea deal, and it did not specifically ask Gramstrup whether he had any basis to believe that Wilson knew that the sentence enhancer did not apply. Gramstrup did testify, however, that the possibility of serving a life sentence without extended supervision was a "significant factor" in Wilson's decision to enter the plea.

¶14     The circuit court denied Wilson's motion. It concluded that the court's admitted failure, during the plea colloquy, to accurately advise Wilson of the maximum sentence he faced "did not affect [Wilson's] decision to accept ... the offered plea from the State" or otherwise have a "significant impact on the outcome of this case." The court made no finding that Wilson otherwise knew his actual maximum possible sentence at the time he pled. Wilson now appeals.

## DISCUSSION

¶15     "When a defendant seeks to withdraw a guilty plea after sentencing, he must prove, by clear and convincing evidence, that a refusal to allow

6

withdrawal of the plea would result in 'manifest injustice.'" ***State v. Taylor***, 2013 WI 34, ¶24, 347 Wis. 2d 30, 829 N.W.2d 482 (citations omitted). A "manifest injustice" may arise in a variety of circumstances. As relevant to this case, "[o]ne way the defendant can show manifest injustice is to prove that his plea was not entered knowingly, intelligently, and voluntarily. A plea not entered knowingly, intelligently, and voluntarily violates fundamental due process, and a defendant therefore may withdraw the plea as a matter of right." ***Id.***, ¶¶24-25 (citations omitted); *see also* ***State v. Van Camp***, 213 Wis. 2d 131, 139, 569 N.W.2d 577 (1997). Whether a plea was entered knowingly, voluntarily and intelligently presents a question of constitutional fact that is reviewed independently. ***State v. Brown***, 2006 WI 100, ¶19, 293 Wis. 2d 594, 716 N.W.2d 906.

¶16 To help ensure that pleas are knowing, intelligent and voluntary, our statutes and case law require circuit courts to inform a defendant of various consequences of his or her plea before the court can accept the plea. *See* WIS. STAT. § 971.08(1); ***Bangert***, 131 Wis. 2d at 261-62. This requirement includes the duty to "establish the [defendant]'s understanding of the … range of punishments [the charged crime] carries." ***Bangert***, 131 Wis. 2d at 261-62; *see also* § 971.08(1)(a). ***Bangert*** also established a specific process for determining whether a defendant is entitled to withdraw a guilty plea due to the circuit court's failure to fulfill its duties while accepting a guilty plea. *See* ***Cross***, 326 Wis. 2d 492, ¶¶19-20 (outlining this process).

¶17 While this general framework continues, our supreme court in ***Cross*** determined that, as to the requirement that circuit courts inform a defendant of the "range of punishments," precision is not required. Specifically, the ***Cross*** court concluded that when the maximum sentence communicated to a defendant is "higher, but not substantially higher, than that authorized by law," a defendant has

not demonstrated a ***Bangert*** violation in the first instance, and the circuit court's error, standing alone, is insufficient to show that the defendant was deprived of his or her constitutional right to due process. ***Cross***, 326 Wis. 2d 492, ¶40. But, if "the difference is significant … a defendant's due process rights are at greater risk." ***Id.***, ¶39. The court also stated that when this type of misinformation—i.e., a defendant being told his or her possible sentence is higher, but not substantially higher, than that authorized by law—results in a defendant receiving a sentence insubstantially higher than that authorized by law, the proper remedy is to commute the defendant's sentence under WIS. STAT. § 973.13, as opposed to plea withdrawal.[3] ***Id.***, ¶34.

¶18 Here, Wilson filed a ***Bangert*** motion that demonstrated a violation of WIS. STAT. § 971.08(1) insomuch as the circuit court, during the plea colloquy, did not ascertain Wilson's understanding of the "potential punishment if convicted" of his charged crime. The court did not make a contrary finding, and the State has not—either below or now on appeal—disputed this fact. In addition, Wilson's motion alleged that he did not know or understand the information that should have been provided at the plea hearing—i.e., his correct maximum possible sentence. Furthermore, at the ***Bangert*** hearing in this case, the State did nothing to establish that Wilson, in fact, otherwise knew his correct maximum possible sentence at the time he pled. Again, this fact is undisputed.

---

[3] In this regard, we read ***Cross*** as holding that such a remedy is only available if the circuit court has already determined that a ***Bangert*** violation itself has not occurred. ***State v. Cross***, 2010 WI 70, 326 Wis. 2d 492, 786 N.W.2d 64; ***State v. Bangert***, 131 Wis. 2d 246, 389 N.W.2d 12 (1986). That is to say, commutation is appropriate if the misinformation only resulted in the actual sentence being "insubstantially higher" than that authorized by law, but plea withdrawal remains the proper remedy if the maximum possible sentence communicated to a defendant *is* substantially higher than that authorized by law.

¶19    Nonetheless, the circuit court determined that its failure to accurately advise Wilson of the maximum sentence Wilson faced "did not affect [Wilson's] decision to accept the ... offered plea from the State" or otherwise have a "significant impact on the outcome of this case." The court may have concluded that no *Bangert* violation occurred here based on its application of *Cross*, although that determination is unclear from the court's decision. To the extent the court's decision was based on a conclusion that Wilson failed to show that he would have pled differently had he known the correct maximum sentence, *Cross* makes clear that such a legal standard is incorrect. *See Cross*, 326 Wis. 2d 492, ¶40 (withdrawing language stating such a requirement from *State v. Quiroz*, 2002 WI App 52, 251 Wis. 2d 245, 641 N.W.2d 715). Rather, the court's "holding is more straightforward: where the sentence communicated to the defendant is higher, but not substantially higher, than that authorized by law, the incorrectly communicated sentence does not constitute a *Bangert* violation," such that "the defendant is not entitled to an evidentiary hearing."[4] *Id.*, ¶¶40, 45.

¶20    Regardless of the basis for the circuit court's decision, on appeal, the State's only relevant argument against a *Bangert* violation having occurred[5] is to

_____

[4] Part of the apparent disconnect and reason for our qualified language regarding the basis for the circuit court's decision is because at the earlier hearing, the court concluded that Wilson had established he was "entitled to a *Bangert* hearing," and it therefore ordered one. As *Cross* makes clear, however, a *Bangert* hearing is unnecessary if *Cross* applies, as there is no *Bangert* violation in the first instance. Still, it is possible the court ordered the evidentiary hearing with the expectation the State would try to prove Wilson's actual knowledge of the correct maximum sentence. Upon the State's failure to do so, the court at that point may have realized it needed to apply the *Cross* test, regardless of the evidence adduced at the evidentiary hearing. In any event, the actual basis for the court's decision is immaterial to our disposition of this appeal, given the applicable standard for our review.

[5] In its response brief, the State seems to suggest that other considerations besides the *Bangert* violation in this case prevent Wilson from withdrawing his plea. We reject this notion. The supreme court explained in *State v. Taylor*, 2013 WI 34, ¶49, 347 Wis. 2d 30, 829 N.W.2d 482, how *Bangert* provides one method—but not the only one—of establishing a manifest

(continued)

suggest we apply *Cross* and hold that "[g]iven Wilson's age at the time he pled, there was no substantial difference between the possible maximum sentence the court communicated and the legally permissible maximum." If the State is correct, this proposition would be true as a matter of law and regardless of Wilson's actual understanding at the time he pled; in the State's view, Wilson's actual understanding is irrelevant because there has been no *Bangert* violation. Again, the issue is one of law, which we review de novo. *Brown*, 293 Wis. 2d 594, ¶19.

¶21 We conclude that the maximum possible sentence communicated to Wilson was substantially higher than that authorized by law. Whether the difference between "the maximum sentence communicated to the defendant" and "the actual allowable sentence" is substantial "will depend on the facts of the case." *Cross*, 326 Wis. 2d 492, ¶¶38, 40-41. Critically, here, the incorrectly stated maximum sentence is the harshest criminal sentence available in Wisconsin (sometimes called "life without"). It all but ensures that the individual will die in prison. The United States Supreme Court has recognized the unique impact of such sentences.[6] *See Graham v. Florida*, 560 U.S. 48, 69-70 (2010).

---

injustice that allows plea withdrawal. Thus, even without a *Bangert* violation, a "defendant can otherwise establish a manifest injustice by showing that there has been a 'serious flaw in the fundamental integrity of the plea.'" *Taylor*, 347 Wis. 2d 30, ¶49 (citation omitted). Contrary to the State's apparent notion, the court was not suggesting that these were additional factors that a defendant must establish in addition to his or her *Bangert* claim to show a manifest injustice.

[6] According to the Court:

> [L]ife without parole sentences share some characteristics with death sentences that are shared by no other sentences. The State does not execute the offender sentenced to life without parole, but the sentence alters the offender's life by a forfeiture that is irrevocable. It deprives the convict of the most basic liberties without giving hope of restoration, except perhaps by executive

(continued)

¶22    In reaching our conclusion, we note that both the quantity of incarceration and the quality attendant to a "life without" sentence make it "substantially higher" than the actual maximum sentence Wilson faced here. To elaborate on this point, if Wilson were sentenced to life without the possibility of extended supervision, he would have no expectation of—or reason to anticipate—ever being free again.[7] It would only be a matter of time before he would die in prison. A sentence of twenty-five years of initial confinement, however, would provide him reason to contemplate and prepare for a possible time when he is allowed to live in an unconfined, nonpenal setting, albeit under extended supervision. In other words, a sentence of "life without" would deprive Wilson of all such yearning, and it is this fundamental aspect of a "life without" sentence that makes it "substantially higher" than a possible sentence of twenty-five years' initial confinement. *Cf. Cross*, 326 Wis. 2d 492, ¶38. Indeed, in "life without" cases, the principal consideration is less with the time gap between a defendant's believed and actual potential release dates, such as in ***Cross***, but rather on whether he or she will *ever* be released.

---

clemency—the remote possibility of which does not mitigate the harshness of the sentence. As one court observed in overturning a life without parole sentence for a juvenile defendant, this sentence "means denial of hope; it means that good behavior and character improvement are immaterial; it means that whatever the future might hold in store for the mind and spirit of [the convict], he will remain in prison for the rest of his days."

*Graham v. Florida*, 560 U.S. 48, 69-70 (2010) (citations omitted).

[7] Wilson would be precluded from seeking sentence adjustment under WIS. STAT. §§ 302.114(1) and 973.014(1g)(a)3.

¶23    We acknowledge there may be situations where the maximum amount of initial confinement for the correct possible sentence is effectively a life sentence for a defendant, such that the above considerations might be of less significance.  But that is not the case here.  As even the State notes, Wilson's average life expectancy when he was sentenced at forty-nine years old was about eighty years of age.  After twenty-five years of initial confinement, Wilson would thus be seventy-four years old upon release.[8]  Also, given that Wilson was convicted of a Class C felony, he would be eligible under WIS. STAT. § 973.195 for sentence adjustment when he has served eighty-five percent of his twenty-five years of initial confinement.  In that instance, he would be approximately age seventy upon release.  But even if he served a full twenty-five years of initial confinement, Wilson could reasonably expect to spend some of his final years in society rather than confined to a prison cell.  We refuse to gainsay the import of an individual having a reasonable opportunity to spend some portion of his or her later years of life without being incarcerated, even if while being under extended supervision.

¶24    Likewise, given the unique nature of a "life without" sentence versus one that is set by a term of days or years, *Cross*'s comments concerning the "abjuring of a defendant's representations in open court" regarding guilt are less compelling.  *Id.*, ¶32.  It strains credulity to assert that one's belief that he or she could be sentenced to life without the possibility of extended supervision is not a meaningful inducement to plead guilty in hopes of avoiding that harsh sentence.

---

[8] Wilson was born on November 29, 1966.  Wilson was arrested around his forty-ninth birthday, and on December 1, 2015, he was given a $25,000 cash bond that he never posted. Because Wilson is entitled to credit for presentence custody from at least December 1, 2015, forward, this date represents the effective start of his sentence.  *See* WIS. STAT. § 973.155.

Additionally, the State's promise to recommend a fifteen-year term of initial confinement is much more meaningful in the context of a potential "life without" sentence versus a potential sentence of twenty-five years' initial confinement.

¶25 In addition to the fact that the incorrect maximum sentence in this case was "life without," our conclusion is buttressed by a few other factual distinctions from the incorrect sentence communicated in *Cross* that was found not to be "substantially higher" than the actual possible sentence. In *Cross*, the circuit court had misinformed Cross that his maximum term of imprisonment was forty years, when in fact it was thirty years—with five years less each of initial confinement and extended supervision. *Id.*, ¶¶1, 11. But there was more at play. As our supreme court stated:

> Under the original charge, first degree sexual assault, Cross understood that he faced a maximum sentence of 60 years. He agreed to plead guilty to second degree sexual assault, which he understood as subjecting him to 40 years imprisonment. In fact, the reduced charge resulting from the plea agreement was even *more* favorable to him than he thought when he entered into it, because it reduced his maximum exposure to 30 years. The record also reflects that the prosecutor could have charged him with multiple counts of first degree sexual assault, which would have likely made the State's case stronger. Cross's plea agreement provided him with benefits that were only enhanced by the reduced maximum sentence.

*Id.*, ¶43. Here, and unlike in *Cross*, Wilson's plea agreement was to his originally charged offense, not to a lesser one. Moreover, there is nothing in the record here reflecting that the State's case could have been enhanced with the potential for multiple other charges. Indeed, Wilson was charged with repeated sexual assault.

¶26 Finally, we emphasize that our conclusion here only relates to the first step in the process of a *Bangert* claim, as informed by the rule *Cross*

established that a certain plea colloquy error regarding the potential punishment is insufficient to constitute a ***Bangert*** violation. The State is still accorded the opportunity to prove at an evidentiary hearing that the defendant's plea was knowing, voluntary, and intelligent despite the deficiencies in the plea hearing on the basis that the defendant was otherwise aware of the correct maximum sentence he or she faced.[9] We remand for further proceedings, directing that Wilson be allowed to withdraw his guilty plea.

*By the Court.*—Judgment and order reversed; cause remanded with directions.

Not recommended for publication in the official reports.

---

[9] Notably, the State has already stipulated that Wilson should be allowed to withdraw his plea. When the State was given the opportunity to further develop the facts surrounding Wilson's understanding of the correct maximum penalty, it instead focused its efforts on demonstrating that Wilson would have accepted the plea deal irrespective of the penalty enhancer's applicability. Under these circumstances, it is not necessary for the circuit court to hold a further evidentiary hearing.